**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | **NO. 02-258** |
| v. | : | |
| | : | **CIVIL ACTION** |
| **MARK KRAUSS** | : | **NO. 06-4239** |

**<u>MEMORANDUM AND ORDER</u>**

**Kauffman, J.**                                                      **May  11  , 2009**


Now before the Court is Petitioner's <u>pro</u> <u>se</u> Motion Pursuant to 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence (the "Motion").  For the reasons discussed below, the

Motion will be denied.


**I.  BACKGROUND**

On April 30, 2002, Petitioner Mark Krauss ("Petitioner") was charged by indictment with

one count of possession of a loaded firearm by a convicted felon, in violation of 18 U.S.C. §

922(g)(1).  On October 20, 2003, Petitioner entered a plea of guilty.  On February 9, 2004,

Petitioner filed a motion to withdraw his guilty plea.  After an evidentiary hearing, the Court

granted his motion on March 18, 2004.  On May 4, 2004, Petitioner was charged by superseding

indictment with one count of possession of a loaded firearm by an armed career criminal, in

violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  On July 9, 2004, he was convicted after a jury

trial.  On September 8, 2005, the Court sentenced him to 84 months of imprisonment, three years

of supervised release, a fine of $1,000, and a special assessment of $100.  Petitioner did not file a

direct appeal.

On September 8, 2006, Petitioner filed a <u>pro se</u> motion for an extension of time to file a motion pursuant to 28 U.S.C. § 2255.  On September 19, 2006, the Honorable John R. Padova, sitting as the emergency judge, denied the motion for an extension without prejudice.  On September 22, 2006, the Clerk of the Court docketed Petitioner's original Motion.  On October 5, 2006, because the original Motion was submitted on the incorrect form, the Court ordered the Clerk to furnish Petitioner with a copy of the current Section 2255 form and required Petitioner to file the Motion on the correct form within 30 days.  On November 20, 2006, the Clerk of the Court docketed the corrected Motion, and the Government filed its response on January 12, 2007.

## II.  DISCUSSION

In his Motion, Petitioner raises two main grounds for relief: (1) he was denied his right to a fair trial and to due process because of prosecutorial misconduct before the grand jury; (2) his trial counsel provided ineffective assistance by (a) failing to seek dismissal of the indictment based on the prosecutorial misconduct before the grand jury; (b) failing to investigate the background of the primary Government witness; (c) "prejudicing" Petitioner's case before it became a federal court matter; and (d) failing to object to the Government's evidence about his prior conviction for witness intimidation.

### A.  Petitioner's Motion Was Timely

#### 1.  The Original Motion

The Government first contends that the Motion is barred by the one-year statute of limitations for filing a motion pursuant to 28 U.S.C. § 2255.  The Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA") provides that the one-year period of limitation begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f); Lloyd v. United States, 407 F.3d 608, 611 (3d Cir. 2005). In the instant case, Petitioner did not file a direct appeal; therefore, his conviction became final ten days after his judgment of conviction when the deadline for filing an appeal expired. See, e.g., Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999) ("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation[s] begins to run, on the date on which the time for filing such an appeal expired."); Evans v. United States, 2006 U.S. Dist. LEXIS 21391, at *7 (W.D. Pa. Apr. 20, 2006) ("Because petitioner did not directly appeal his judgment of conviction to the court of appeals, his judgment of conviction became final when the time for filing a notice of appeal expired—i.e., ten days after his judgment of conviction."). The judgment of conviction was entered on September 13, 2005 and became final on September 23, 2005 after the deadline for filing a notice of appeal expired. Accordingly, Petitioner had until September 23, 2006 to file his original Motion.[1]

_____

[1]    The Government argues that the "operative date for purposes of his petition in this case is the date the judgment of conviction was final, which was on September 9, 2005" and that the deadline for the original Motion was therefore September 9, 2006. Gov't Resp. 4. However,

-3-

Although not received by the Clerk of the Court until September 22, 2006, Petitioner's original Motion was "filed" on September 18, 2006 when he delivered the document to the prison mailroom.  See Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) ("[A] pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court.  And because we see no reason why federal prisoners should not benefit from such a rule, and for the purposes of clarity and uniformity, we extend this holding to the filing of motions under § 2255."); see also Certified Mail Receipt, attached as Ex. 1 to Pet'rs Reply (reflecting that the original Motion was left with the prison mailroom on September 18, 2006, received by the post office on September 19, 2006, and delivered to the Clerk of Court on September 22, 2006).  Therefore, Petitioner's original Motion was filed several days before the September 23, 2006 deadline.

### 2.  The Corrected Motion

On October 5, 2006, because the original Motion was filed on the incorrect form, the Court ordered the Clerk of the Court to provide Petitioner with a correct form and ordered him to submit the corrected Motion within thirty days.  The Government argues that because the corrected Motion was not docketed until November 20, 2006, the Motion should be dismissed for failure to comply with the Court's October 5, 2006 Order.  However, as noted above, the date the Clerk of the Court receives or dockets a Section 2255 Motion is not the date the Motion is

---

the Government incorrectly begins its calculation from the date the judgment was signed by the Court rather than the date the judgment was entered by the Clerk of the Court.  See Fed. R. App. P. 4(b)(6) (explaining that a judgment is not entered for purposes of the ten-day deadline for filing an appeal until "it is entered on the criminal docket").  The Government's calculation also neglects to include the ten-day period for filing a notice of appeal before the judgment of conviction becomes final.

"filed" for statute of limitations purposes.  See Burns, 134 F.3d at 113.  Rather, the operative

"filing" date is October 30, 2006, the date Petitioner delivered the corrected Motion to the prison

mailroom.  See Certificate of Service to Pet'rs Corrected Mot. (certifying that the corrected

Motion was placed in the prison's internal mail system on October 30, 2006); see also Certified

Mail Receipt, attached as Ex. 2 to Pet'rs Reply (reflecting that the corrected Motion was sent

from the prison on November 1, 2006 and received by the Clerk of the Court on November 2,

2006).  Accordingly, Petitioner complied with the Court's October 5, 2006 Order.

**B.  Merits Analysis**

**1.  Prosecutorial Misconduct in the Grand Jury**

Petitioner first claims that the Government violated his constitutional rights by

responding to a question from Joanne Riley, a witness appearing before the grand jury who later

testified at trial.  Specifically, Petitioner objects to the following exchange occurring as Ms. Riley

described her normal morning routine:

> Q.  Now, I want to start by asking you whether or not on that day you were—at,
> approximately—you know, early in the morning, did you have—were you going
> forward to conduct your own business?
> A.  Yes.
> Q: Was that sometime after 9:00?
> A.  Yeah.  Should I?
> Q.  Yeah.  What is your normal routine in the morning?
> A.  I usually get up, do what I have to do, send the children to school.  This
> particular day I was getting my transpass because I work as a security guard,
> Roxborough Memorial, so I could go to work the next day.  I was standing on the
> corner.

Grand Jury N.T. 3, attached to Mot. at Ex. 8.  According to Petitioner, the question "Should I?"

proves that the Government "coached" the witness in order to suborn perjury because the witness

was asking whether she should provide a coached, false answer about her normal routine, and the

-5-

Government responded in the affirmative.  Petitioner argues that because the Government instructed the witness to provide a false story, the superseding indictment should have been dismissed due to prosecutorial misconduct.

As noted above, Petitioner failed to raise this (or any) claim on direct appeal.  The claim, therefore, is procedurally defaulted because "[a] section 2255 petition is not a substitute for an appeal."  Gov't of V.I. v. Nicholas, 759 F.2d 1073, 1074 (3d Cir. 1985).  Because Petitioner failed to raise this defaulted claim on direct appeal, he may raise it only if he demonstrates cause and resulting prejudice.  See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003) ("[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."); United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) ("We hold [that the] cause and prejudice standard applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed.").

In an attempt to demonstrate cause for his failure to raise the claim on appeal, Petitioner for the first time alleges that he asked his counsel to file a notice of appeal and that his counsel refused to do so.[2]  This ineffective assistance of counsel, Petitioner asserts, constitutes "cause"

---

[2]     An attorney's failure to file a notice of appeal despite a defendant's instructions to do so constitutes ineffective assistance "because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice.  Counsel's failure to do so cannot be considered a strategic decision . . . ."  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).  Petitioner does not attempt to raise his counsel's alleged failure to appeal as a separate ineffective assistance claim; instead, he raises it in an effort to demonstrate "cause" for his failure to appeal.  Because the one-year statute of limitations for his Motion has expired, Petitioner may not amend the Motion to include his counsel's failure to appeal as a new claim for relief.  See, e.g., United States v. Thomas, 221 F.3d 430, 436 (3d Cir. 2000) ("[A] party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired.").  Nor would any such claim "relate back" to any claims in his current Motion—which all relate to his trial counsel's pretrial and trial conduct—because any new claim of post-trial ineffective assistance is not "tied to a common core of operative facts."  Mayle v. Felix, 545 U.S. 644, 664 (2005).

-6-

sufficient to overcome his procedural default.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).

Even assuming that Petitioner has demonstrated cause, however, he cannot establish that the

alleged misconduct  "worked to his actual and substantial disadvantage, infecting his entire trial

with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170 (1982).

Petitioner cites no authority to support the proposition that a prosecutor may not confer with a

witness prior to the witness' testifying before the grand jury, and he points to no evidence to

support his conclusory assertion that Ms. Riley "lied" when she answered the question about her

normal morning routine.  Notably, Petitioner has not attempted to demonstrate how Ms. Riley's

"coached" answer was false.  He simply states that it was a lie and concludes without explanation

that this lie caused him to be indicted.  Petitioner offers nothing more than speculation that he

was prejudiced by the Government's conduct before the grand jury.  Accordingly, the Court will

deny relief on this claim.

## 2.  Ineffective Assistance of Counsel

Petitioner also brings several claims related to his trial counsel's allegedly deficient

performance both before and during the trial.[3]  In order to establish a claim of ineffective

assistance of counsel, Petitioner must prove (a) deficient performance by counsel and (b) actual

prejudice as a result of the deficient performance.  Strickland v. Washington, 466 U.S. 668, 687

---

[3]       Unlike the claim of prosecutorial misconduct, Petitioner's ineffective assistance of
counsel claims are not procedurally defaulted because ineffective assistance claims are not
subject to the general procedural default rule and may be raised for the first time in a 2255
proceeding.  See Massaro, 538 U.S. at 509 ("We . . . hold that failure to raise an
ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being
brought in a later, appropriate proceeding under § 2255."); United States v. Thornton, 327 F.3d
268, 271 (3d Cir. 2003) (noting the Third Circuit's longstanding preference "to defer the issue of
ineffectiveness of trial counsel to a collateral attack").

(1984); see also Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999).  To satisfy the first

prong of Strickland, Petitioner must show that his counsel's representation fell below an

"objective standard of reasonableness."  466 U.S. at 688.  The Court "must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, [Petitioner] must overcome the presumption that, under the circumstances, the

challenged action 'might be considered sound trial strategy.'"  Id. at 689.  Under the second

prong of the Strickland test, "[i]t is not enough for [Petitioner] to show that the errors had some

conceivable effect on the outcome of the proceeding."  Id. at 693.  The question, instead, is

whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different.  A reasonable probability is a probability sufficient

to undermine confidence in the outcome."  Id. at 694.[4]

### a.  Failure to Seek Dismissal of the Indictment

Petitioner first argues that his trial counsel was ineffective for failing to seek dismissal of

the indictment based on the aforementioned "misconduct" by the Government in preparing the

grand jury witness.  As explained above, this claim is without merit, and his trial counsel cannot

be ineffective for failing to raise a frivolous argument.  See, e.g., United States v.

Briceno-Rodriguez, 47 F. App'x 167, 170 (3d Cir. 2002) ("[C]ounsel could not be deficient in

failing to raise a frivolous argument.").

---

[4]        After trial but prior to the sentencing hearing, Petitioner filed a pro se "Motion for
Appointment of Counsel Due to Present Counsel's Ineffective Assistance."  At a hearing on the
Motion, the Court stated, "I will grant your motion to replace counsel.  Not because I'm making
any judgment about [trial counsel's] service, but because you've asked for it, and because it will
not prejudice anyone to do it . . . ."  Oct. 5, 2004 Hr'g Tr. 5.  Accordingly, the fact that the Court
granted Petitioner's pro se Motion did not reflect a finding that Petitioner's trial counsel provided
deficient representation.

### b.  Failure to Investigate the Background of the Government Witness

Next, Petitioner argues that his trial counsel failed to investigate Ms. Riley's background and therefore was unable to cross-examine her effectively.  In support of his argument that a thorough investigation of Ms. Riley would have been valuable to proper cross-examination, Petitioner has attached as exhibits to his Motion various documents taken from Ms. Riley's garbage.[5]  From these various documents, Petitioner draws a series of patently frivolous conclusions.  For example, he concludes that: (1) Because Ms. Riley received a mass mailing from an eyeglass store, "she wore glasses, or had an eye problem" that would have been pertinent during cross-examination, Mot. 10; and (2) Because Ms. Riley's personal mail and other documents reflected various spellings of her name—e.g., "Joyann Riley, "Johanna Riley," and "Joanne Drasher"—Petitioner's trial counsel "would of [sic] found out that she uses more than one name" if he had conducted a proper investigation.  Id.[6]  Petitioner argues further that various documents—including a single piece of correspondence from the Pennsylvania Department of Public Welfare and her son's 2006 application for summer employment—prove that Ms. Riley lied when she stated that she was employed.[7]  The remainder of evidence Petitioner submits is

---

[5]      Petitioner's father and a private investigator claim to have recovered these documents from trash bags left in front of Ms. Riley's residence.

[6]      Petitioner expands on this claim in his Reply, stating that he "has a belief that Ms. Riley['s] real name isn't Joanna nor Joyann [that] is used in the grand jury transcripts but actually Johanna Riley."  Reply 10.  Petitioner fails to explain, however, how possible misspellings or alternate spellings culled from Ms. Riley's garbage prove that her name is actually "Johanna Riley," and more fundamentally, he fails to explain why this would have been a relevant topic for proper cross-examination.

[7]      Petitioner asserts that her son's 2006 employment application answers in the affirmative a question about whether his family receives food stamp assistance.  The fact that Petitioner attempts to use a document from 2006 to prove that Ms. Riley "lied" in 2004

used as a foundation for inappropriate attacks on Ms. Riley's character[8] or irrelevant speculation about her children.[9]

Even assuming, however, that any of the evidence Petitioner has submitted (a) could have been discovered by his trial counsel in 2004, (b) would have, in any meaningful sense, undermined Ms. Riley's credibility, and (c) would have been admissible under the Federal Rules

---

underscores a larger problem with Petitioner's evidence, as all of the material he submits reflects either a 2005 or 2006 date. The fact that circumstances (such as Ms. Riley's employment or need for corrective eyewear) may have changed between 2001 (the year she witnessed Petitioner's crime), 2004 (the year she testified at trial), and 2005-2006 (the years reflected on Petitioner's submissions) does not "prove" that Ms. Riley lied about any aspect of her trial testimony.

Petitioner also refers to an affidavit from a private investigator in which the investigator claims to have interviewed someone named Kenny Gibbs, who allegedly told the investigator that Ms. Riley had never been employed at Roxborough Memorial Hospital as she claimed. See Sept. 12, 2006 Aff. of Tyrone Burks. The law is clear that hearsay is inadmissible in Section 2255 proceedings. See Fed. R. Evid. 1101(e); United States v. Rith, 171 F. App'x 228, 232 (10th Cir. 2006) (noting that "a court is not required to consider hearsay statements submitted in support of a § 2255 motion").

[8]      For example, Petitioner submits an affidavit from his father in which he states that Ms. Riley is unable to care for her children and that "[s]he's just and [sic] drug addict and alcohol drinker." Oct. 16, 2006 Aff. of Raymond Nutter 2. To the extent Petitioner argues his trial counsel was ineffective for failing to make such character attacks, the Court rejects his argument. See Fed. R. Evid. 608(a).

[9]      Petitioner submits various documents that, in his view, reflect problems between Ms. Riley and her children. These so-called family problems, as well as Petitioner's comments that her children are "trash pickers," Reply 10, are completely irrelevant and would have been improper subjects for cross-examination even if trial counsel had discovered them.

In an affidavit attached to the Motion, Petitioner's father explains that during the trial, he overheard Ms. Riley asking "court people" if they were going to help her. Oct. 16, 2006 Aff. of Raymond Nutter 2. Although he "did not know what she was talking about at that time," it has since, through an unexplained process, "become[] clear she was talking about her kids in foster care and her other son in prison." Id. Apparently, Petitioner's father believes that Ms. Riley testified to get unspecified help from unidentified persons for her children. While a witness' possible bias or motive for testifying is unquestionably relevant to cross-examination, the affidavit fails to explain how Petitioner's father deduced Ms. Riley's motivation in 2006 or how trial counsel could have discovered this information in 2004.

of Evidence, the Court cannot find that trial counsel was constitutionally ineffective for failing to

delve into these issues on cross-examination.  During the trial, evidence was introduced that

Petitioner pled guilty in state court to intimidating Ms. Riley in an effort to dissuade her from

testifying against him.  Any attacks on Ms. Riley's credibility might have drawn greater attention

to the witness intimidation conviction, highlighting Petitioner's attempt to spoil evidence and

further damaging his defense in this case.  Petitioner has not overcome the strong presumption

that his counsel utilized a sound trial strategy and performed adequately under the circumstances.

Strickland, 466 U.S. at 689.  Accordingly, the Court rejects Petitioner's claim that trial counsel

was constitutionally ineffective for "failing to investigate" Ms. Riley for cross-examination

purposes.

### c.  Prejudicing Petitioner's State Court Proceeding

Petitioner next argues that trial counsel, who also represented him while this case was

pending in state court, was ineffective for persuading him to plead guilty to the state witness

intimidation charge.  Petitioner argues that he was unaware the conviction would be used against

him in his federal criminal trial and that if he had known, he would not have entered a guilty plea

in state court.  Whatever the merits of Petitioner's argument, he may not challenge any aspect of

his state court proceedings in this 2255 Motion.[10]  Accordingly, the Court will deny this claim.

### d.  Failure to Challenge the Admissibility of the Witness Intimidation
### Conviction

Finally, Petitioner challenges his trial counsel's failure to challenge the admission of

---

[10]     Petitioner has raised this claim in a post-conviction motion in state court, the
proper forum for this claim.  See Mot. 13.

witness intimidation evidence under Fed. R. Evid. 404(b).  However, the law is clear that a

defendant's attempts to threaten or intimidate a witness may be introduced without running afoul

of Rule 404(b) because such attempts reflect consciousness of guilt.  See United States v. Gatto,

995 F.2d 449, 454 (3d Cir. 1993) ("It is well-established that evidence of threats or intimidation

is admissible under Rule 404(b) to show a defendant's consciousness of guilt . . . ."); see also

United States v. Hayden, 85 F.3d 153, 159 (4th Cir. 1996) ("Evidence of witness intimidation is

admissible to prove consciousness of guilt and criminal intent under Rule 404(b), if the evidence

(1) is related to the offense charged and (2) is reliable."); United States v. Mendez-Ortiz, 810

F.2d 76, 79 (6th Cir. 1986) ("Though not listed in Rule 404(b), spoliation evidence, including

evidence that defendant attempted to bribe and threatened a witness, is admissible to show

consciousness of guilt.").  In light of the case law finding this evidence admissible and the fact

that this testimony did not present the risk of "unfair" prejudice to Petitioner, any objection to its

admission—whether based on Fed. R. Evid. 404(b) or 403—would have failed.  As discussed

above, Petitioner personally threatened the primary witness not to testify about the facts of this

case, and trial counsel's failure to object to the admissibility of this probative evidence was not

ineffective assistance of counsel.[11]

---

[11]     Petitioner cites Old Chief v. United States, 519 U.S. 172 (1997) to support the proposition that the witness intimidation conviction should have been established by stipulation rather than through the testimony of Ms. Riley.  As the Old Chief Court noted, however, the general rule is "that the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it."  Id. at 186-87.  Old Chief held only that a district court abuses its discretion by permitting evidence of the nature of a prior felony conviction when the defendant is prepared to stipulate that he is, for purposes of a felon-in-possession charge, a felon.  Id. at 191.  The Court specifically noted that convictions admitted pursuant to Fed. R. Evid. 404(b) need not be introduced by stipulation.  Id. at 190.

**III.  CONCLUSION**

For the reasons discussed above, the Court concludes that Petitioner is not entitled to relief on any of his claims.[12]  Because Petitioner has not made the requisite showing of the denial of a constitutional right, a certificate of appealability should not issue.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  An appropriate Order follows.

---

[12]      Because the Court finds his claims meritless, it will deny Petitioner's request for an evidentiary hearing.  See Rule 4(b) of the Rules Governing Section 2255 Proceedings (requiring summary dismissal of a 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief").